JOHN WESLEY WILLIAMS AND SOLOMON JONES *v.* STATE OF MARYLAND

[No. 13, September Term, 1967.]

*Decided February 14, 1968.*

The cause was argued before MURPHY, C. J., and ANDER-
SON, MORTON, ORTH, and THOMPSON, JJ.

*Bernard A. Greenberg* for appellant Williams, and *Benjamin
L. Brown* for appellant Jones.

*Bernard L. Silbert, Assistant Attorney General,* with whom
were *Francis B. Burch, Attorney General, Charles E. Moylan,
Jr., State's Attorney for Baltimore City,* and *Thomas N. Bid-
dison, Jr., Assistant State's Attorney for Baltimore City,* on
the brief, for appellee.

MURPHY, C. J., delivered the opinion of the Court.

Appellants, John Wesley Williams and Solomon Jones, were
convicted of armed robbery by the court sitting without a jury
on November 9, 1966, and each was sentenced to a term of ten
years imprisonment in the Maryland Penitentiary. The ques-
tions presented on this appeal relate to (a) the propriety of the
court's action in quashing the appellants' subpoena duces tecum,
(b) the legality of their arrest and the admissibility of evidence
seized incident thereto, and (c) the sufficiency of the evidence
to support the convictions.

There was evidence adduced at the trial which showed that
at 10:15 p.m. on August 27, 1966, three Negro men held up a
liquor store in Baltimore City at gun point; that in the course
of the robbery, the co-proprietor, Eli Small, was pistol whipped
about the head by one of the robbers; that Small and a store
clerk, John Wilson, were thereafter shoved into a back room
of the store; that the robbers then took about $800 in cash,
a camera, a knife, and several bottles of whiskey, fired three
shots and fled from the premises; that Wilson promptly phoned
the police, reporting the robbery, and Officer Edmund Fry re-

sponded to the call, and immediately elicited from Small a general physical description of the three robbers; that while Fry was on his way back to his patrol car to make a radio report of the robbers' descriptions, a bystander in the crowd which had assembled at the scene of the crime told the officer that he saw the men run out of the store and flee in a red and white Pontiac Catalina automobile and he pointed out the direction in which they fled; and that Fry then reported the information received from Small and from the bystander over his police radio.

Officer Francis Frederick, in his cruising car, heard the radio report of the robbery at about 10:20 p.m. He was about three miles from the scene of the crime when, at 10:35 p.m., he observed a late model red and white Pontiac Catalina containing four colored males. Since this vehicle fit the description of the get away car, Frederick followed it until it stopped at a curb, at which point Frederick drove his police car alongside the Pontiac. The Pontiac backed up quickly, with its wheels squealing, in an attempt to get into an alley. Officer Frederick blocked the Pontiac with his vehicle, and he and his partner then arrested the four occupants of the Pontiac at gun point. Appellants were two of the men in the Pontiac, the others being Albert Offer and Ulise Mack. A search of the persons of the arrested individuals and of the Pontiac uncovered a number of incriminating articles.

Prior to trial, appellant filed routine motions for discovery and inspection under Maryland Rule 728 seeking the names of State's witnesses, the right to inspect objects obtained from or belonging to appellants, and the substance of any statements made by them to police. They also filed motions to suppress evidence seized from them at the time of their arrest on the ground that the arrest was unlawful and the ensuing search and seizure likewise illegal. The appellants also filed a request for the issuance of a subpoena duces tecum to order the police to produce their records pertaining to appellants' arrests, "and more particularly the exact records pertaining to the complaint made to the Police Department, the exact method in which said complaint was received by the Police Department, by whom received, giving name, title and department of such person, name of complainant, precise time said complaint was received by the

Police Department, precise time said complaint was conveyed to other police, manner of such conveyance, and exact contents and full details of any such message or conveyance."

While the State promptly provided the information sought by appellants in their motions for discovery and inspection, it did not seek to quash the subpoena duces tecum until the morning of the trial, at which time it made an oral motion to that end pursuant to Maryland Rule 115b [1] on the ground that it was "unreasonable and oppressive" in that it sought "all sorts of records of the police involved in the investigative procedure in this case;" and further that the data sought to be subpoenaed "is not properly subject to subpoena duces tecum, but rather is the subject of discovery under Rule 728." The court granted the State's motion to quash after an unreported bench conference was held, but it gave no reasons for its conclusion. It does not appear from the record that appellants at any time prior to the court's ruling on the State's oral motion to quash advised the court that all they really wanted, as they now concede, was to listen to the tape of the police radio calls upon which the State's case of probable cause to arrest was predicated. As the trial progressed, however, it became evident that the informa-

---

1. Rule 115

"a. *Purpose.*

A summons to a witness, pursuant to Rule 114 (Witness —Summons for), may also command the person to whom it is directed to produce books, papers, documents or other tangible things designated therein.

b. *Control of Court.*

The court, on motion made promptly and wherever practicable at or before the time specified in the summons for compliance therewith, may (1) quash or modify the summons if it is unreasonable or oppressive or (2) condition denial of the motion upon the advancement by the person in whose behalf the summons is issued of the reasonable cost of producing the books, papers, documents or other tangible things. The court may direct that books, papers, documents or other tangible things designated in the summons be produced before the court at or prior to the trial or prior to the time when they are to be offered in evidence and may upon their production permit them or portions of them to be inspected by the parties."

tion sought by the subpoena was, in reality, so limited and, at the conclusion of the State's case, the appellants specifically requested, for the first time, so far as the record shows, that they be permitted access to the tape. They then acknowledged that the tape could only be played on the playback machine in the communications division at police headquarters, and they requested that the court listen to the tape prior to ruling on their motion to suppress the evidence. At this juncture of the trial, the State's testimony on the issue of probable cause had been completed, and its witnesses cross-examined; and while the court stated that ordinarily it would agree that it would be proper for the appellants to know what the tape contained, it declined at that time to go to the police station to hear the tape and held, primarily on the basis of the testimony of Officers Fry and Frederick, that there was probable cause to arrest. Appellants' motions to suppress were, therefore, denied.

Appellants contend that the trial court erred in quashing the subpoena since there was no showing made out that it was "unreasonable or oppressive" under Maryland Rule 115b. They contend that the important question relating to probable cause to arrest does not concern itself with who gave the officers the description of the robbers and of the get away car, but whether such descriptions were given to the officers at all, and, if so, whether they were included in the police radio broadcast of the crime.

The State on the other hand contends that the subpoena improperly sought "the investigative work product" of the police department, and that such product is neither discoverable, nor may it be subpoenaed; and that in *Whittle v. Munshower,* 221 Md. 258, it was held that police records are not public records, nor are they open to inspection and that, absent a statute, they are "confidential." The State further contends that appellants had ample opportunity to cross-examine the State's witnesses who testified on the issue of probable cause, and that under these circumstances, it was not an abuse of discretion for the court to quash the subpoena.

The request for the issuance of the subpoena was not dated, but it appears from the record that the subpoena was issued at least four days prior to the trial date. The record indicates that

the State's Attorney first learned of the subpoena on the morning of the trial and that in compliance therewith had "the police file" in court. Just what the "police file" consisted of is not shown in the record.

Whether the police tape is discoverable under Rule 728, as apparently conceded by the State's Attorney at trial, but apparently now disputed by the Attorney General on appeal, is not the question presently before us; rather it is whether it was an abuse of the lower court's discretion to quash the subpoena, as drawn and issued, in view of all the circumstances revealed by the record before us. In considering this question, we do not have the benefit of the arguments of counsel, if any were made, with respect to whether the subpoena was "unreasonable or oppressive" and, as heretofore indicated, the record does not disclose the basis for the court's action in quashing the subpoena. Nor do we know whether appellants in fact limited their request at the outset to the police tape; certainly, the language of the subpoena, while broad enough to cover the tape, was so broad as to give little indication that it was the police tape that the subpoena specifically sought to reach. Neither does the record disclose whether the tape in question was in existence at the time the subpoena was issued. And the record is devoid of evidence to show the manner in which the Police Department of Baltimore City maintained its tapes of police calls. While it is our understanding that each such tape covers a maximum of twenty-four hours of calls coming in over thirty existing police lines, embracing all radio and call box transmissions, and all calls to the police emergency number, we also understand—and again there is no evidence to establish the fact—that there is a very limited number of such tapes; and that they must be erased and re-used within a relatively short period of time so that, as here, it is probable that the tape in question has long since been erased and re-used. Since it is our further understanding— again not supported by any evidence—that the tapes can only be played back on a large machine located at police headquarters—a machine which cannot be transported into the courtroom — a subpoena duces tecum for the tape, without more, would be of no practical value as an evidentiary item, unless the police were to treat such a subpoena as a request for a steno-

graphic transcript of the relevant portion of the tape. While we believe that an accused should in a proper case be afforded access to the tapes of police radio calls where probable cause to arrest is squarely in issue, and the State seeks to establish such probable cause on the basis of police information disseminated over the police radio, we cannot, on the state of the record before us, conclude that the lower court's quashing of the subpoena constituted reversible error, particularly since there was no specific request for the tapes until long after the trial had begun, and no apparent effort made to make arrangements, in advance of trial, for listening to the relevant portions of the tape.

We think appellants' arrests were lawful as having been based on probable cause to believe that a felony had been committed and that appellants had committed it. It is, of course, well settled that a report of a felony and a description of the perpetrators broadcast over a police radio may furnish probable cause for an arrest. *Hopkins and Terry v. State,* 239 Md. 517; *Farrow v. State,* 233 Md. 526; *Michaels v. State,* 2 Md. App. 424. In the present case, the arresting officer had a description of the get away car and a general description of three colored males who had perpetrated it. Upon seeing a car matching the description of the get away car in near proximity to the crime, and with four colored occupants in it, the officer was clearly justified in attempting to stop it. As we said in *Michaels v. State, supra,* it is difficult to define when suspicion ripens into probable cause, but we think it plain that such probable cause existed, if not before, when the Pontiac endeavored to elude or escape from the police car. In so concluding, we are not unmindful of the fact that the individual who furnished police with the description of the get away car, and of the direction in which it fled, was never identified by the police. We believe, however, that the test of the reliability of the information received under circumstances such as were here involved is controlled by *Jones v. State,* 242 Md. 95, where the court held at page 101:

> "When a crime of violence has been committed in the early morning hours, and the only chace of apprehending the supected criminal seems to be a prompt

apprehension of the car in which he was driving away, the investigating officer cannot be expected to take the time to ascertain and make notes of the names and backgrounds of all the persons at the scene who told him what they had observed. Our system of justice must be responsive, not only to the needs of individual liberty, but also to the rights of the community. *United States v. Ventresca,* 380 U. S. 102, 112 (1965)."

We think the rationale of *Jones* fits the facts of this case and we conclude that the arrests were lawful, and that the search of the persons of appellants, as well as of the vehicle at the scene of the arrest, was likewise lawful.

Nor do we find merit in appellants' contention that the evidence was insufficient to support their convictions. They were identified by the victim at the trial, and the incriminating evidence of their involvement in the crime, seized from their person and from the vehicle under their control when arrested, clearly constituted relevant and admissible evidence justifying the trier of fact in concluding that appellants were guilty of the offense charged.

Finally, appellants contend that the court erred in failing to grant their motion for a mistrial when the prosecuting witness was taken before the jury box for the purpose of identifying a co-defendant, Ulise Mack, who had been placed there by his attorney. At this point in the trial, however, appellants had already been identified by the prosecuting witness, and we see no error in the court's denial of their motion for a mistrial.

*Judgments affirmed.*